## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2020, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Tyler D. Helmond
Voyles Vaiana Lukemeyer
Baldwin & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Steven Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Isaac J. Horne,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 31, 2020

Court of Appeals Case No.
20A-CR-877

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Pigman,
Judge

Trial Court Cause No.
82D03-2001-F5-30

**Baker, Senior Judge.**

[1] Isaac Horne appeals his convictions for Level 6 Felony Domestic Battery Resulting in Moderate Bodily Injury[1] and Class A Misdemeanor Invasion of Privacy.[2] Horne argues that the trial court erroneously determined that his constitutional right to confrontation was forfeited by his wrongful conduct. Finding no error, we affirm.

## Facts

[2] On December 29, 2019, Horne hit Amanda Davis in the face when she arrived at his house to pick up their daughter. Davis later called 911. Evansville Police Officer Korey Winn responded to the dispatch and found Davis holding an ice pack to her face. After seeing the extent of Davis's injuries, Officer Winn called for medical assistance. Davis was admitted to the hospital and treated for fractures of five bones surrounding her right eye; she remained in the hospital for two days. Officer Winn arrested Horne, who denied that he had struck Davis.

[3] On January 2, 2020, the State charged Horne with two counts of Level 5 felony attempted obstruction of justice;[3] three counts of Level 6 felony domestic battery; and Class A misdemeanor invasion of privacy.[4]

---

[1] Ind. Code § 35-42-2-1.3(b)(3).

[2] Ind. Code § 35-46-1-15.1(a)(1).

[3] The State later dismissed the obstruction of justice charges and added a charge of Level 5 felony domestic battery resulting in serious bodily injury.

[4] Davis had a no contact order in place on the day that Horne battered her.

[4]     Davis failed to appear at two scheduled depositions or at trial.  On March 10, 2020, the State filed a motion for an evidentiary hearing on the issue of the admissibility of Davis's statements to police.  According to the State, Horne had forfeited his right to confront Davis through his wrongdoing; specifically, he had violated the no contact order by making repeated calls to Davis from jail and encouraging her not to cooperate with the prosecution.  The trial court held a hearing the next day at which approximately ninety minutes of phone calls were admitted into evidence.  On March 12, 2020, the trial court granted the State's motion, finding that Horne had forfeited his right to confront Davis by his own wrongdoing and admitting Davis's statements to police officers into evidence.

[5]     Horne's jury trial took place on March 12, 2020.  The jury found Horne guilty of three counts of Level 6 felony domestic battery and Class A misdemeanor invasion of privacy.  At Horne's April 2, 2020, virtual sentencing hearing, the trial court merged two of the domestic battery convictions into the third.  Horne was sentenced to consecutive terms of two years for domestic battery and nine months for invasion of privacy.  Horne now appeals.

# Discussion and Decision

[6]     Horne's argument is best framed as whether the trial court erred by admitting the statements made by Davis to law enforcement into evidence.  A trial court has broad discretion in ruling on the admissibility of evidence, and we generally afford latitude to the trial court in this decisionmaking process.  *Carr v. State*,

106 N.E.3d 546, 552 (Ind. Ct. App. 2018), *trans. denied*. But when the defendant argues that a constitutional violation has resulted from the admission of evidence, we apply a de novo standard of review. *Id.*

[7] Generally, the Sixth Amendment to the United States Constitution affords criminal defendants the right to confront witnesses against him. This rule "allows the admission of an absent witness's testimonial out-of-court statement only if the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness." *Scott v. State*, 139 N.E.3d 1148, 1153 (Ind. Ct. App. 2020), *trans. denied*. One exception to this rule occurs, however, when the defendant forfeits his right to confrontation. Specifically, if the defendant's own wrongdoing caused the declarant to be unavailable to testify at trial, then the defendant has forfeited his right to confront that witness. *Id.* The State must prove that the defendant forfeited his right to confrontation by a preponderance of the evidence. *Id.* at 1154.

[8] First, Horne argues that the State's motion seeking an evidentiary hearing on forfeiture violated his procedural due process rights because it was insufficiently specific and failed to provide requisite notice. The motion is entitled "motion for evidentiary hearing on the issue of the admissability [sic] of police statements based upon forfeiture by wrong doing [sic]," and the body of the motion states as follows:

> Comes now the State of Indiana . . . and files the State's request
> for an evidentiary hearing related to evidence of the Defendant's

efforts to make contact with the reported victim in violation of the no contact order in this case.

This request is made pursuant [to] the United States Supreme Court['s] recognition in *Crawford v. Washington* (2004), 124 S.Ct. 1354[,] of the doctrine of forfeiture by wrong doing [sic] as it relates to the 6th Amendment and statements made to law enforcement as well as the Indiana Court of Appeals in *Scott v. State*[.]

Appellant's App. Vol. II p. 64.

[9] Initially, we note that Horne raised no due process objections to the trial court based on the content of the State's motion. Consequently, he has waived this argument. *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014). Waiver notwithstanding, we note that Horne did, in fact, receive the process to which he was due—a contested, evidentiary hearing on these issues at which he was present and represented by counsel. Horne's attorney cross-examined the State's witnesses and presented vigorous argument on these issues. Consequently, regardless of the content of the State's motion (which, we note, described the request and the reasons for the request, including citations to multiple authorities), Horne's due process rights were not violated.

[10] Next, Horne argues that the trial court erred by finding that the State proved by a preponderance of the evidence that Horne's wrongdoing caused Davis to be unavailable to testify. Forfeiture by wrongdoing occurs where the defendant engages in behavior that is intended to procure a victim's absence and the

behavior was so significant that the victim, in fact, failed to attend depositions or trial. *Scott*, 139 N.E.3d at 1155; *see also* Ind. Evid. Rule 804(b)(5).

[11] We find *Scott* instructive. In that case, after Scott battered Maria Cook, his pregnant girlfriend, she gave a recorded statement to law enforcement identifying Scott as the person who had caused her injuries. Scott was arrested. Following his arrest, he began contacting Cook from jail, repeatedly asking her to change her story so that the case would be dismissed and urging her to tell the authorities that she had overexaggerated the incident. She emailed the State and the presiding judge, asking that the case be dismissed. Scott then began telling Cook that if she did not attend the trial or the depositions (which he would ask his attorney to schedule so that she could then fail to appear), then the case would be dismissed. Thereafter, the trial court entered a no contact order prohibiting Scott from having any contact with Cook. Ignoring the no contact order, Scott continued to call her from jail, telling her to miss depositions and fail to attend the trial. Cook failed to appear for three scheduled depositions or trial. The trial court found that Scott had forfeited his right to confront her by his own wrongdoing, admitting her initial statement to law enforcement into evidence. 139 N.E.3d at 1151-53.

[12] This Court affirmed. We found that while Cook initially cooperated with law enforcement, after Scott began pressuring her from jail, she asked that the case be dismissed and stopped cooperating. He tried to minimize the nature of his conduct, but we found that unpersuasive: "[t]he issue is not the severity of Scott's conduct; it is whether Scott engaged in conduct that was designed to

procure Cook's absence and whether that conduct was of such significance that she has been 'kept back' from attending depositions or trial." *Id.* at 1155. We found that Scott's conduct qualified:

> the evidence shows that Scott's ongoing harassment of Cook through the litany of phone calls was a campaign *designed* to prevent Cook from testifying against him. Scott continually and repeatedly encouraging her not to attend depositions or trial precludes Scott from reaping the benefits of his own wrongdoing and to hold otherwise would undermine the integrity of the judicial process.

*Id.* (emphasis original). Ultimately, we found that the State had proved by a preponderance of the evidence that Scott's conduct was designed, at least in part, to keep her from testifying against him, thereby forfeiting his right to confrontation.

[13] In this case, Davis, too, was initially cooperative with law enforcement. She called 911 and cooperated with Officer Winn's investigation at the scene of the incident. After Horne was arrested, he began calling Davis (in violation of a no contact order) and a mutual friend, Kristi Johnson. The calls began on January 23, 2020, and continued up to the date of his trial on March 12, 2020. Additionally, at least two other inmates called Davis and Johnson on Horne's behalf. Some relevant examples from the ninety minutes of calls are as follows:

- On January 27, 2020, Horne instructed Davis to "let [them] know . . . there is no contest[.]" State's Ex. 1.
- On February 27, 2020, another inmate told Johnson that Horne wanted her to "tell shorty not to show her pretty face[.]" *Id.*

- Also on February 27, 2020, the same inmate called Davis, instructing her to "get down there and get that non-prosecution order[.]" *Id.*
- On multiple occasions, Horne told Davis and Johnson that Davis should not appear so that the charges would be dismissed. Horne also repeatedly asked Davis to request that the State dismiss the case.
- On March 4, 2020, Horne told Davis that she would "lose" her child to the Department of Child Services if Horne got convicted. *Id.*

In sum, the evidence demonstrates that Davis initially cooperated with law enforcement. But after Horne began repeatedly calling her from jail (and having other inmates call her and a friend on his behalf), asking that she try to get the case dismissed, instructing her to fail to appear, and threatening her with the loss of custody of her child, Davis stopped cooperating. She failed to appear at scheduled depositions and did not attend the trial.

[14] As in *Scott*, it is apparent that Horne's litany of phone calls was a campaign designed to prevent Davis from testifying against him—all in violation of a no contact order—and that his campaign succeeded. Horne should not be able to reap the benefits of his own wrongdoing. Consequently, we find that the trial court did not err by concluding that the State proved by a preponderance of the evidence that Horne's own wrongdoing caused Davis to be unavailable at trial. In other words, Horne forfeited his right to confront Davis's statements against him and the trial court did not err by admitting those statements into evidence.[5]

---

[5] Horne raises two additional, brief arguments. First, he argues that we should reverse because the trial court was unable (due to technical difficulties) to listen to two of the many phone calls submitted by the State. Neither party argued that those two calls contained anything different from the other calls that the trial court

The judgment of the trial court is affirmed.

Bailey, J., and Vaidik, J., concur.

---

was able to listen to, nor did either party object to the trial court making a ruling without listening to those two calls. Therefore, we decline to reverse on this basis.

Second, he argues that we should reverse because the trial court failed to make factual findings. There is no rule requiring the trial court to make factual findings under these circumstances. Therefore, we decline to reverse on this basis.